

**FILED**

NOV 1 0 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____

## IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES JONES JR.
(Name of Plaintiff)
C.S.P.- SACRAMENTO
(Address of Plaintiff)
P.O. Box 290066
REPRESA, CA. 95671

vs.

TIM VIRGA, C/os YANG, HOM,

BROWN JOHN DOES 1-10

(Names of Defendants)

8 11 CV 3000 KJN (PC)
(Case Number)

COMPLAINT 42 USCS 1983
AND DEMAND FOR JURY TRIAL

I. Previous Lawsuits:

A. Have you brought any other lawsuits while a prisoner: ☐ Yes ☒ No

B. If your answer to A is yes, how many?: _____ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

Plaintiff CHARLES JONES JR. _____

Defendants TIM VIRGA (WARDEN), YANG (CORRECTIONAL OFFICER) HOM
(CORRECTIONAL OFFICER), BROWN (CORRECTIONAL OFFICER) JOHN DOES 1-10

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983          Rev'd 5/99

- 1 -

2. Court (if Federal Court, give name of District; if State Court, give name of County)

_____ N/A _____

3. Docket Number _____ N/A _____

4. Name of judge to whom case was assigned _____ N/A _____

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
_____ N/A _____

6. Approximate date of filing lawsuit _____ N/A _____

7. Approximate date of disposition _____ N/A _____

II. Exhaustion of Administrative Remedies

A. Is there a grievance procedure available at your institution?   ☒ Yes          ☐ No

B. Have you filed a grievance concerning the facts relating to this complaint?
                                                                    ☒ Yes          ☐ No
   If your answer is no, explain why not _____ N/A _____

C. Is the grievance process completed?                             ☒ Yes          ☐ No

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official
position in the second blank, and his/her place of employment in the third blank. Use item B
for the names, positions and places of employment of any additional defendants.)

A. Defendant _TIM VERGA_____ is employed as _WARDEN_ .
                                        at _C.S.P. - SACRAMENTO_

B. Additional defendants _CORRECTIONAL OFFICER (c/o) YANG, C/o HOm,_
   _C/o BROWN ARE EMPLOYED AT C.S.P. - SACRAMENTO AS CORRECTIONAL_
   _OFFICERS. JOHN DOES 1-10 ARE LIKEWISE EMPLOYED AT C.S.P. -_
   _SACRAMENTO AS VARIOUS OFFICERS._

   _( SEE ATTACHED COMPLAINT )_

-2-

IV.     Statement of Claim

(State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including dates and places.  Do not give any legal arguments or cite any cases or statutes.  Attach extra sheets if necessary.)

PLEASE  SEE  ATTACHED  COMPLAINTS PAGES 3-7; FACTS

PLAINTIFF  WAS  ALLOWED  TO  BE  ASSAULTED  BY  TWO  INMATES  WITH  A
KNIFE  AND  RAZOR  DUE  TO  DEFENDANTS  FAILURES  TO  FOLLOW  POLICY
AND  PROCEDURE  DURING  A  LOCK  DOWN.

V.  Relief.

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

MONETARY  COMPENSATION,  PUNITIVE  DAMAGES,  COST  OF  SUIT,  JURY  TREAL,
(SEE  ATTACHED  COMPLAINT  PAGE 9]

Signed this __1__ day of __NOVEMBER__, 20 _11_.

Charles Jones Jr.
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

__11/1/11__
(Date)

Charles Jones Jr.
(Signature of Plaintiff)

-3-

1  Charles Jones Jr.
   C.D.C.R.# F-93018
2  C.S.P.-SACRAMENTO
   P.O. BOX 29-0066
3  REPRESA, CALIF. 95671

4  IN PRO-SE

5

6

7

8

9

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10  **Charles Jones Jr.**              )
                    **Plaintiff,**     )  Case No._____
11           **-VS-**                  )
                                       )  **42 U.S.C. § 1983 CIVIL COMPLAINT**
12  **Tim Virga (Warden), Correctional Officer**  )  **AND DEMAND FOR JURY TRIAL**
13  **Yang, Correctional Officer Hom, Correctional** )
    **Officer Brown, John Does 1-10**  )
14                  **Defendants,**    )
                                       )
15  **Defendants are sued in their individual** )
    **capacities.**                    )
16

17                          **I.**

18              **JURISDICTION AND VENUE**

19      1.    This is a civil rights action brought pursuant to **42 U.S.C. §1983** to redress the deprivation,

20

21  under the color of state law, of rights secured by the **Constitution of the United States**.

22  The court has jurisdiction under **28 U.S.C. §§ 1331** and **1343(a)(3)**.

23      2.    The Eastern District Court is an appropriate venue under **28 U.S.C. § 1391(b)(2)** because the

24  unlawful acts and practices alleged occurred primarily within this judicial district and the majority of

25  the defendants reside within this district.
26

27  **Plaintiff respectfully requests a jury trial on these allegations.**

28  ///

## II.

## PARTIES

3.    The Plaintiff, Charles Jones Jr, is and was at all relevant times mentioned herein, a prisoner of the State of California in the care and custody of the California Department of Corrections and Rehabilitations (C.D.C.R.), being housed at C.S.P.-Sacramento in Represa California and the Plaintiff is still currently confined in C.S.P.-Sacramento.

3. Defendant, Tim Virga, is the Warden of C.S.P.-Sacramento and was at all rellevant times mentioned in this complaint legally responsible for the operation of C.S.P.-Sacramento and for the welfare of all the inmates of the prison.

4.    4. Defendant, John Doe 1, is a Correctional Officer (c/o) who was at all rellevant times mentioned in this complaint employed as a Correctional Captain at C.S.P.-Sacramento and as such was personally responsible for making progam decisions for C-Facility and for the welfare of all inmates of the prison.

5. Defendant, John Doe 2, is a c/o who was at all rellevant times mentioned in this complaint employed as a Correctional Leuitenant at C.S.P.-Sacramento and as such was personally responsible for enforcing program decisions on C-Facility and for the welfare of all the inmates on C-Facility.

7. Defendant, C. Yang, is a (c/o) for the C.D.C.R., who was at all relevant times mentioned in this complaint employed as a c/o at C.S.P.-Sacramento and who was responsible for the safety and security of inmates .

8.    8. Defendant, J. Brown, is a c/o for the C.D.C.R. who was at all relevant times mentioned in this complaint employed as a c/o at C.S.P.-Sacramento and who was responsible for the safety and security of inmates.

9. Defendant T. Hom is a c/o for the C.D.C.R. who was at all relevant times mentioned in this complaint employed as a c/o at C.S.P.-Sacramento and who was responsible for the safety and security of inmates.

42 U.S.C. 1983 CIVIL COMPLAINT

1    10. John Does 3-10 are each responsible for the safety and security of the plaintiff and in some

2    manner for the violations and damages to the plaintiff alleged herein.  True names are presently

3    unknown to the plaintiff.  Plaintiff sues John Does 1-10 by such fictitious names and will seek leave to

4    amend this complaint to add true names when the same has been ascertained.

5
      11. Each defendant is sued in their individual capacity. At all times mentioned in this complaint
6
      each defendant acted under the color of state law.
7

8                                              **III.**

9                                           **FACTS.**

10     12. At all times mentioned herein, up to the time of the Plaintiff being assaulted with deadly
11
       weapons by two Northern Hispanic inmates while Plaintiff was naked in the shower, the Plaintiff was
12
13     housed in builing seven, cell 106 upper on C-Facility,

14     13. On Septmber 7, 2010 an incident occurred on C-facility in five block in which a group of

15     Northern Hispanic inmates attempted to murder a Black inmate, who was a Crip, by stabbing him

16     multiple times; [Exhibit 1]

17
       14. As a result of this attempted murder all Black and Northern Hispanic inmates were locked
18
19     down.

20     15. As a further result of the lock down all Black and Northern Hispanic inmates were segregated

21     at all times when in the building, and had to be handcuffed prior to being let out of the cell. Meaning if

22     a Northern Hispanic inmate or inmates were out of the cell for movement then no Black inmates could
23
       be let out of their cell until the Northern Hispanic inmates were locked back down, or if any Black
24
25     inmates were out of the cell no Northern Hisopanic inmates could be let out until the Black inmate or

26     inmates were locked back in the cell, but at all times out of the cell all inmates had to be secured in

27     handcuffs.

28

16. There was also an alternate out of building movement schedule for Black and Northern Hispanic inmates who were scheduled for ducats for medical, dental, etc. which kept the Black and Northern Hispanic inmates seperated and therefore unable to run into each other.

17. This procedure required that if inmates of one group were to be taken out for ducats (for example to medical) they were to be handcuffed at the cell door through the tray slot prior to the cell door being opened and the inmates let out. The staff were then to escort the inmates aff to the ducat spot and then returned escorted to the cell door, locked in the cell and then uncuffed through the tray slot.

18. Showers were to be ran with the inmates handcuffed at the cell door in the same fashion as ducat escorts, then taken to the shower, locked in the shower and then uncuffed for the shower. Then recuffed, the shower door unlocked and the inmate escorted back to the cell, locked in the cell and then uncuffed in the same manner as inmates being returned from a ducat.

19. This procedure also required that the staff who were escorting inmates back from ducats to take the inmates returning from the ducats all the way to the cell and lock them in the cell prior to uncuffing the inmates, and for the tower c/o to ensure no inmates of the other group were unescorted or uncuffed on the tier prior to opening the secured section door and allowing the escorting c/o's to enter the section and return the inmates to the cell.

20. The lock down memorandum specifically stated that all lock down inmates in blocks five through eight were to be on restrained (handcuffed) escorts, controlled-restrained showers with no simultaneous movement of Black and Northern Hispanic inmates within the facility.

[Exhibit 1]

21. On or around October 12, 2010, the lockdown was modified so that all Black and Northern Hispanic inmates in blocks five through eight were kept on lock down but the shower and escort restraint status was removed to allow for escorting inmates without handcuffs, however, during the

shower program the section doors were to remain closed and there was still to be no simultaneous movement of Black and Northern Hispanic inmates, and all escorts were to be picked up at the cell and returned to the cell escorted. [Exhibit 2]

22. On or around November 6, 2010 an incident occurred in five block (on C-Facility) in which four Black inmates were being returned from an escorted medical line, uncuffed, and the section door was opened while two Northern Hispanic inmates were in the shower which resulted in the Black inmates assaulting the Northern Mexican inmates in retaliation for the attempted murder in September.

23. Despite this incident no restrained shower or handcuffed escort requirements were reinstated. [Exhibit 3]

24. On or around December 1, 2010 the plaintiff was allowed out of his cell for a shower at approximately 10:45 a.m. [Exhibit 4]

25. Plaintiff was not cuffed, was not escorted to the shower nor was the plaintiff locked in the shower. [Exhibit 4]

26. At approximately 10:48 a.m. Defendant Hom radioed for the building control tower c/o's in blocks five through eight that a group of Northern Hispanic inmates were being returned from medical to the buildings and was it clear. [Exhibit 5]

27. Defendant Yang called all clear [Exhibit 5]

28. Defendant's Brown and Hom then proceeded to returned a group of Northern Hispanic inmates from the medical area to buildings five, six, seven and eight by simply dropping them off outside the building and going to the next building. [Exhibit 5]

29. Two of the Northern Hispanic inmates were dropped off at building seven without defendant's Brown and Hom escorting the inmates to the cell or even looking into the section to first determine if any Black inmates were on the tier in that section prior to allowing the two Northern Hispanic inmates to return to their cell. [Exhibit 5]

30. Defendant Yang then allowed the two Northern Hispanic inmates into the section without first checking to see if the plaintiff was still on the tier and/or in the shower and not locked back in the cell per department policy. [Exhibit 6]

31. The two Northern Hispanic inmates then observed the plaintiff naked in the shower, one of the Northern Hispanic inmates, retreived a knife from his rectum [Exhibit 7] and both Northern Hispanic inmates began to climb the stairs in an attempt to reach the plaintiff.

32. Plaintiff noticed the two Northern Hispanic inmates who both held weapons in their hands when they were almost close enough to attack plaintiff. [Exhibit 4]

33. Plaintiff exited from the shower in an attempt to avoid being attacked by the two weapon weilding inmates. [Exhibit 4]

34. The two Northern Hispanic inmates chased plaintiff out of the section into the rotunda without Defendant Yang firing any shots from either his mini-14 rifle or the block gun. (The rotunda is an area outside of the three sections in each building which runs along the length of the building and is roughly a hallway approximately 7 feet wide by thirty feet long with a section in the middle roughly 10 feet squared off of the hallway) [Exhibit 6]

35. Defendant Yang then closed the section door effectively trapping plaintiff in with the two Northern Hispanic inmates. [Exhibit 6]

36. One Northern Hispanic inmate had a home made knife and was stabbing plaintiff. [Exhibits 6, 8 & 9]

37. The other Northern Hispanic inmate had a home made straight razor and was slashing the plaintiff. [Exhibits 7, 8 & 9]

38. Defendant Yang still fired no weapons and the two building officers were unable to assist plaintiff during the attack because defendant Yang had not let them out of the other section in which they were locked into while counting.

42 U.S.C. 1983 CIVIL COMPLAINT

[Exhibit 8]

39. Eventually staff responded and the attack was ended.

40. Plaintiff was forced to kneel cuffed up and naked.

41. As a result of the attack plaintiff suffered multiple stab wounds and several slashes on the upper body, shoulders, head and back area. [Exhibit 10]

42. Plaintiff was placed in administrative segregation as a result of his being attacked. [Exhibit 12]

## IV.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

43. Plaintiff has filed an inmate greivance [602] through the final level following the grievance procedures available at C.S.P.-Sacramento and has exhausted all administrative remedies. [Exhibit 11]

## LEGAL CLAIMS

## I.

### (FIRST CAUSE OF ACTION)

### (14TH AMENDMENT-FAILURE TO PROTECT)

44. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this complaint.

45. Defendants have violated plaintiffs rights guaranteed by the 14th **Amendment** of the **United States Constitution** in that an attack with dangerous and deadly weapons occurred against the plaintiff as a direct result of the failure of the defendants to follow proper procedure as outlined in this complaint when two Northern Hispanic inmates were allowed unescorted and unrestrained into the section in which plaintiff was showering and proceeded to chase, stab and slash plaintiff.

## II.

### (SECOND CAUSE OF ACTION)

### (14TH AMENDMENT-FAILURE TO PROTECT)

44. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this complaint.

45. Defendants have violated plaintiffs rights guaranteed by the 14th **Amendment** of the **United States Constitution** in that an attack with dangerous and deadly weapons occurred against the plaintiff as a direct result of the failure of the defendants to reinstate the restrained escorted shower and restrained escorted ducat policy after the attack of November 6, 2010 in which it became aparant that the two group of inmates wcould not peaceably program together at that time and when administration knew of the Northern Hispanics refusal to program with any Black inmates.

### III.

### (THIRD CAUSE OF ACTION)

### (8TH AMENDMENT-EQUAL TREATMENT)

46. Plaintiff realleges and incorporates by reference all previous paragraphs of this complaint.

47. Defendants have violated plaintiffs rights guaranteed by the 8th **Amendment** to the **United States Constitution** in that plaintiff was denied the equal protection of the law when defendants allowed plaintiff to be assaulted, either through the failure to follow proper procedure or through the failure to implement policies which would have protected plaintiff.

### IV.

### (FOURTH CAUSE OF ACTION)

### (14TH AMENDMENT- DUE PROCESS)

### (VIOLATION OF MANDATORY DUTIES)

48. Plaintiff realleges and incorporates by reference all previous paragraphs of this complaint.

49. Defendants violated **Penal Code section 673** which imposes a mandatory duty upon defendants, and each of them, to not allow any lack of care whatever which would injure or impair the health of the prisoner.

### V.

## CAUSATION

50. As a direct and proximate cause of the aforementioned acts and omissions on the part of the defendants, plaintiff suffered assault, battery, stabbing and slashing injuries.

51. As a direct and proximate result of the aforementioned acts and omissions on the part of the defendants, plaintiff has suffered and continues to suffer general and special damages in the amount to be proven at trial.

52. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein.

## VI.

## PRAYER FOR RELIEF.

**WHEREFORE**, plaintiff respectfully prays that this court grant the following relief:

1) Compensatory damages in the amount of $1,000,000.00 against each defendant, jointly and severally;

2) Punitive damages in the amount of $5,000,000.00 against each defendant;

3) A jury trial on all issues triable by jury;

4) Plaintiffs cost of this suit;

5) Any additional relief this court deems just, proper and equitable, and;

6) Reasonable attorney fees pursuant to **42 U.S.C. section 1983** and any other grounds authorized by law.

DATED:  11/1/11

Respectfully Submitted,

Charles Jones Jr.

Charles Jones Jr.

///

///

42 U.S.C. 1983 CIVIL COMPLAINT

1
## VERIFICATION

2    I have read the foregoing complaint and verify that the matters alleged therein are true and

3 correct, except as matters alleged on information and belief, and to those, I believe them to be true.

4    Executed this _1st_ day of _November_ 2011 at C.S.P.-Sacramento in Represa, California.

5 95671

6 ///

7 ///

8 ///

9 ///

10

11

12                                                          _Charles A Jones Jr._

13

14                                                          Charles Jones Jr.

15                                                          Plaintiff/Declarant

16                                                          In Pro-Se

17

18

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

# EXHIBIT COVER PAGE

<div style="border:1px solid">

1

</div>

EXHIBIT

Description of this Exhibit:

**LOCK DOWN MEMORANDUM DATED SEPTEMBER 7, 2010**

Number of pages to this Exhibit: 2 pages.

JURISDICTION:   (Check only one)

☐ Municipal Court

☐ Superior Court

☐ Applellate Court

☐ State Supreme Court

[XX] United States District Court

☐ State Circuit Court

☐ United States Supreme Court

☐ Grand Jury

~ }} ~

**Department of Corrections and Rehabilitation**

**SECOND & THIRD WATCH CONTROL OFFICERS WILL
READ THIS MEMO OVER PUBLIC ADDRESS SYSTEM**

# MEMORANDUM

*LAST REVISED: 9/7/10 @ 8:41 AM*

Date:     September 7, 2010

To:       **C-FACILITY STAFF AND INMATE POPULATION**

From:     California State Prison-Sacramento, Represa, CA. 95671

Subject:  **C-FACILITY OPERATIONS EFFECTIVE, TUESDAY, SEPTEMBER 07, 2010, UNTIL FURTHER NOTICE**

**Due to Attempted Murder of an Inmate, which occurred in C-5 Block on September 7, 2010, at approximately 0740 hours, involving Black and Northern Hispanic inmates, all Black and Northern Hispanic inmates, housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups are on Modified Program status until further notice.**

**All remaining inmates will continue normal programming.**

| | |
|---|---|
| **Feeding:** | Cell feeding for all Level IV inmates. |
| **Work & Education:** | No work or education for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining Level-IV inmate population. Normal work programs for all Dorm inmates. |
| **Yard:** | No yard for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining inmate Level-IV population. Normal for Dorm inmates. |
| **Telephone:** | No telephone for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| **Showers:** | Controlled RESTRAINED showers, one cell at a time, for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups: First Tier, 2/W on Monday, Wednesday, and Friday; Second Tier, 3/W on Tuesday, Thursday, and Saturday. All section doors will remain closed during shower program. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| **Visiting:** | No visits for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| **Family Visiting:** | No family visits for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| **Religious Services:** | Chaplains by request for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |

**Medical / Mental Health Services:** Medical services will be provided by RN/LVN's during rounds. All Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups, will be escorted/transported RESTRAINED to Medical / Mental Health Appointments. All Black inmates housed in Blocks 1 – 4 will be handcuffed at the Pedestrian Sally Port gate prior to entering the Pedestrian Sally Port to attend their Medical/Dental appointments. Northern Hispanics and those celled with them, who are ducated will be escorted to the Clinic based on the established Hispanic rotational schedule. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Canteen:** No canteen for all Black and Northern Hispanic housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Legal Library:** All Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups will use the paging system Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Laundry/ Clothing Exchange:** Laundry/Clothing exchange will be at the cell door for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal clothing exchange for the remaining Level-IV inmate population. Normal clothing exchange for all Dorm inmates.

**Packages & Property:** No packages/special purchases delivery for all Black and Northern Hispanic housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal packages/special purchases delivery for the remaining Level-IV inmate population. Normal property delivery for all inmates.

**NA/AA & Men's Group:** No NA/AA for all Black and Northern Hispanic housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Escorts:** All Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups, will be escorted RESTRAINED within the Facility. **Note: There will be no simultaneous Black and Northern Hispanic inmate movement to occur in any location within C-Facility.** All Black inmates housed in Blocks 1 – 4 will be handcuffed at the Pedestrian Sally Port gate prior to entering the Pedestrian Sally Port to attend their Medical/Dental appointments. All Level IV, Level I & II inmates will be placed in handcuffs behind their back when departing the Facility.

No Northern Hispanic and Southern Hispanic inmate simultaneous movement is to occur in any location within C-Facility. No Black and Northern Hispanic inmate simultaneous movement is to occur in any location within C-Facility. Northern Hispanic inmates will be housed only in Blocks: 5, 6, 7 and 8. Southern Hispanic inmates will be housed only in Blocks: 1, 2, 3 and 4.

Note: Disruptive Group Designation is based upon Staff observation and Suspicion of Disruptive Group activity.

**S. SHANNON**
Facility Captain
C-Facility, CSP-Sacramento

# EXHIBIT COVER PAGE

<div style="border:1px solid black; display:inline-block; padding:10px;">

**2**

</div>

EXHIBIT

Description of this Exhibit:

**LOCK DOWN MEMORANDUM DATED OCTOBER 12, 2010**

Number of pages to this Exhibit: 2 pages.

JURISDICTION:   (Check only one)

|  | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Applellate Court |
| ☐ | State Supreme Court |
| XX | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

State of California                    Department of    ections and Rehabilitation

SECOND & THIRD WATCH CONTROL OFFICERS WILL
READ THIS MEMO OVER PUBLIC ADDRESS SYSTEM

# MEMORANDUM

*LAST REVISED: 10/12/10@ 9:52 AM*

Date:    October 12, 2010

To:      C-FACILITY STAFF AND INMATE POPULATION

From:    California State Prison-Sacramento, Represa, CA. 95671

Subject: C-FACILITY OPERATIONS EFFECTIVE. TUESDAY. OCTOBER 12. 2010. UNTIL FURTHER NOTICE

Due to Attempted Murder of an inmate, which occurred in C-5 Block on September 7, 2010, at approximately 0740 hours, involving Black and Northern Hispanic inmates. all Black and Northern Hispanic inmates, housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups are on Modified Program status until further notice.

All remaining inmates will continue normal programming.

ⓒ Indicates Change

| | |
|---|---|
| Feeding: | Cell feeding for all Level IV inmates. |
| Work & Education: | No work or education for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Note: Black inmates housed in Blocks 1 – 4 that are assigned to work positions in Blocks 5 – 8 or Dining Rooms 3 & 4 will not be allowed to report to work. Normal for the remaining Level-IV inmate population. Normal work programs for all Dorm inmates. |
| Yard: | No yard for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining inmate Level-IV population. Normal for Dorm inmates. |
| Telephone: | No telephone for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| Showers: | Controlled UNRESTRAINED showers, one cell at a time for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups: First Tier, 2/W on Monday, Wednesday, and Friday; Second Tier, 3/W on Tuesday, Thursday, and Saturday. All section doors will remain closed during shower program. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| Visiting: | No visits for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| Family Visiting: | No family visits for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| Religious Services: | Chaplains by request for all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |

C-FACILITY OPERAT   NS FOR FRIDAY, OCTOBER 22, 201[  NTIL FURTHER NOTICE

**Medical /**
**Mental Health**
**Services:** ☼
Medical services will be provided by RN/LVN's during rounds. All Level IV inmates, with the exception of Native American, Southern Hispanic, Mexican National inmates, as well as those inmates associated with the Southern Hispanic disruptive group, will be escorted/transported UNRESTRAINED to Medical / Mental Health Appointments. Black and Northern Hispanic inmates will be kept separate from each other while in the Clinic area. Northern Hispanics and those celled with them, who are ducated will be escorted to the Clinic based on the established Hispanic rotational schedule. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal for all Dorm inmates.

**Laundry-**
**Pickup/**
**Clothing**
**Exchange:**
Laundry Pick-up/Clothing exchange will be at the cell door for all inmates. Normal clothing exchange for all Dorm inmates.

**Packages &**
**Property:**
Normal for Native American, Southern Hispanic and Mexican National inmates. No packages/special purchases delivery for all Level-IV lockdown inmates. Normal personal property delivery for all inmates. Legal property for all inmates will be delivered upon request. Normal packages/special purchases and property delivery for all Dorm inmates.

**NA/AA &**
**Men's Group:**
Normal for Native American, Southern Hispanic and Mexican National inmates. No NA/AA for all Level IV lockdown inmates. Normal for all Dorm inmates.

**Escorts:** ☼
All lockdown inmates living in Blocks 1-8 may be escorted simultaneously **UNRESTRAINED** within the buildings and the Facility. **However, there will be no simultaneous Black and Northern Hispanic inmate movement to occur in any location within C-Facility.** All Level IV, Level I & II inmates will be placed in handcuffs behind their back when departing the Facility.

No Northern Hispanic and Southern Hispanic inmate simultaneous movement is to occur in any location within C-Facility. No Black and Northern Hispanic inmate simultaneous movement is to occur in any location within C-Facility. Northern Hispanic inmates will be housed only in Blocks: 5, 6, 7 and 8. Southern Hispanic inmates will be housed only in Blocks: 1, 2, 3 and 4.

Note: Disruptive Group Designation is based upon Staff observation and Suspicion of Disruptive Group activity.

**S. SHANNON**
Facility Captain
C-Facility, CSP-Sacramento

# EXHIBIT COVER PAGE

<div style="border:1px solid">

**3**

</div>

EXHIBIT

Description of this Exhibit:

## LOCK DOWN MEMORANDUMS DATED
## NOVEMBER 9, 29, 2010 AND JULY 18, 2011
## SHOWING NOVEMBER 6 ASSAULT

Number of pages to this Exhibit: $5$ pages.

JURISDICTION:   (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Appellate Court |
| ☐ | State Supreme Court |
| XX | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

SECOND & THIRD WATCH CONTROL OFFICERS WILL
READ THIS MEMO OVER PUBLIC ADDRESS SYSTEM

# MEMORANDUM

*LAST REVISED: 11/9/10@ 11:40 AM*

Date:     November 9, 2010

To:       **C-FACILITY STAFF AND INMATE POPULATION**

From:     California State Prison-Sacramento, Represa, CA. 95671

Subject:  **C-FACILITY OPERATIONS EFFECTIVE, TUESDAY, NOVEMBER 9, 2010, UNTIL FURTHER NOTICE**

Due to the Battery on an Inmate with a Weapon, which occurred in main yard on November 9, 2010, involving American Native Indian (AMI) inmates, all Level IV American Native Indian inmates, and those celled with them, as well as those inmates associated with American Native Indian disruptive groups are on Modified Program status until further notice.

Due to the Battery on an Inmate with a Weapon, which occurred in C-3 Block on October 27, 2010, possibly involving a White and a Southern Hispanic inmate, all Level IV White, Southern Hispanic, and AMI inmates, and those celled with them, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups are on Modified Program status until further notice.

Due to Attempted Murder of an Inmate, which occurred in C-5 Block on September 7, 2010, at approximately 0740 hours, involving Black and Northern Hispanic inmates, all Black and Northern Hispanic inmates, housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 – 8 are on Modified Program status until further notice.

All remaining inmates will continue normal programming.

**Feeding:** Cell feeding for all Level IV inmates.

**Work & Education:** No work or education for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8.  Note: Black inmates housed in Blocks 1 – 4 that are assigned to work positions in Blocks 5 – 8 or Dining Rooms 3 & 4 will not be allowed to report to work. Normal for the remaining Level-IV inmate population.  Normal work programs for all Dorm inmates.

**Yard:** No yard for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8.  Normal for the remaining inmate Level-IV population.  Normal for Dorm inmates.

**Telephone:** No telephone for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8.  Normal for the remaining Level-IV inmate population.  Normal for all Dorm inmates.

**Showers:** Controlled UNRESTRAINED showers, one cell at a time for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8:  First Tier, 2/W on Monday, Wednesday, and Friday; Second Tier, 3/W on Tuesday, Thursday, and Saturday.  All section doors will remain closed during shower program.  Normal for the remaining Level-IV inmate population.  Normal for all Dorm inmates.

**Visiting:** No visits for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8.  Normal for the remaining Level-IV inmate population.  Normal for all Dorm inmates.

**Family Visiting:** No family visits for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8.  Normal for the remaining Level-IV inmate population.  Normal for all Dorm inmates.

**Legal Library:** All Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8 will use the paging system Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

# C-FACILITY OPERATIONS FOR TUESDAY, NOVEMBER 9, 2010, UNTIL FURTHER NOTICE

**Religious Services:** Chaplains by request for all Level-IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Medical / Mental Health Services:** Medical services will be provided by RN/LVN's during rounds. All White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8, will be escorted/transported UNRESTRAINED to Medical / Mental Health Appointments. Northern Hispanics and those celled with them, who are ducated will be escorted to the Clinic based on the established Hispanic rotational schedule. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Canteen:** No canteen for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups. All Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 – 8 **are allowed to buy canteen with the limit of $55.00 for Stationery and Hygiene Only.** Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Laundry/ Clothing Exchange:** Laundry/Clothing exchange will be at the cell door for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8. Normal clothing exchange for the remaining Level-IV inmate population. Normal clothing exchange for all Dorm inmates.

**Packages & Property:** **For all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 – 8, if your 3rd and 4th quarter packages have already been received by R&R, you have the option of leaving them here or sending them back to the vendor at your *own expenses.***

No packages/special purchases delivery for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8. Normal personal property delivery for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8. Legal property for White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - will be delivered upon request. Normal packages/special purchases and property delivery for the remaining inmate population.

**NA/AA & Men's Group:** No NA/AA for all Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Escorts:** All Level IV White, Southern Hispanic, and AMI inmates, as well as those inmates associated with White, Southern Hispanic, and AMI disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5 - 8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5 - 8, will be escorted UNRESTRAINED within the Facility. **However, there will be no simultaneous** White, Southern Hispanic, and AMI, or Black and Northern Hispanic inmate movement to occur in any location within C-Facility. All Level IV, Level I & II inmates will be placed in handcuffs behind their back when departing the Facility.

No White, Southern Hispanic, and AMI, or Northern Hispanic and Southern Hispanic, or Black and Northern Hispanic inmate simultaneous movement is to occur in any location within C-Facility. Northern Hispanic inmates will be housed only in Blocks: 5, 6, 7 and 8. Southern Hispanic inmates will be housed only in Blocks: 1, 2, 3 and 4.

Note: Disruptive Group Designation is based upon Staff observation and Suspicion of Disruptive Group activity.

**S. SHANNON**
Facility Captain
C-Facility, CSP-Sacramento

**SECOND & THIRD WATCH CONTROL OFFICERS WILL READ THIS MEMO OVER PUBLIC ADDRESS SYSTEM**

# MEMORANDUM

*LAST REVISED: 11/29/10 @ 2:00 PM*

Date:    November 29, 2010

To:     **C-FACILITY STAFF AND INMATE POPULATION**

From:    California State Prison-Sacramento, Represa, CA. 95671

Subject:   **C-FACILITY OPERATIONS EFFECTIVE, MONDAY, NOVEMBER 29, 2010, UNTIL FURTHER NOTICE**

**Effective immediately, all AMI inmates resume normal programming.**

Due to the Battery on an Inmate with a Weapon, which occurred in C-3 Block on October 27, 2010, possibly involving a White and a Southern Hispanic inmate, <u>all</u> Level IV White, Southern Hispanic inmates, and those celled with them, as well as those inmates associated with White, Southern Hispanic disruptive groups are on Modified Program status until further notice.

Due to Attempted Murder of an Inmate, which occurred in C-5 Block on September 7, 2010, at approximately 0740 hours, involving Black and Northern Hispanic inmates, all Black and Northern Hispanic inmates, housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5–8 are on Modified Program status until further notice.

✪ **Indicates change**

| | |
|---|---|
| **Feeding:** | Cell feeding for all Level IV inmates. |
| **Work & Education:** | No work or education for <u>all</u> Level IV White and Southern Hispanic, as well as those inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8. Note: Black inmates housed in Blocks 1–4 that are assigned to work positions in Blocks 5–8 or Dining Rooms 3 & 4 will not be allowed to report to work. Normal for the remaining Level-IV inmate population. Normal work programs for all Dorm inmates. |
| **Yard:** | No yard for <u>all</u> Level IV White and Southern Hispanic, as well as those inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8. Normal for the remaining inmate Level-IV population. Normal for Dorm inmates. |
| **Telephone:** | No telephone for <u>all</u> Level IV White and Southern Hispanic, as well as those inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| **Showers:** | Controlled UNRESTRAINED showers, one cell at a time for <u>all</u> Level IV White and Southern Hispanic, as well as those inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8: First Tier, 2/W on Monday, Wednesday, and Friday; Second Tier, 3/W on Tuesday, Thursday, and Saturday. All section doors will remain closed during shower program. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| **Visiting:** | No visits for <u>all</u> Level IV White and Southern Hispanic, as well as those inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |
| **Family Visiting:** | No family visits for <u>all</u> Level IV White and Southern Hispanic as well as those inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates. |

**Legal Library:** Case 2:90-cv-00520-KJM-SCR inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8 will use the paging system Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Religious Services:** Chaplains by request for all Level IV White and Southern Hispanic as well as those inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Medical / Mental Health Services:** Medical services will be provided by RN/LVN's during rounds. All White and Southern Hispanic as well as those inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8, will be escorted/transported UNRESTRAINED to Medical / Mental Health Appointments. Northern Hispanics and those celled with them, who are ducated will be escorted to the Clinic based on the established Hispanic rotational schedule. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Canteen:** No canteen for all Level IV White and Southern Hispanic, as well as those inmates associated with White and Southern Hispanic disruptive groups. All Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5–8 **are allowed to buy canteen with the limit of $55.00 for Stationery and Hygiene Only.** Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Laundry/ Clothing Exchange:** Laundry/Clothing exchange will be at the cell door for all Level IV White and Southern Hispanic, as well as those inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8. Normal clothing exchange for the remaining Level-IV inmate population. Normal clothing exchange for all Dorm inmates.

**Packages & Property: ☉** **Normal property and quarterly package delivery to all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them.** No packages/special purchases delivery for all Level IV White and Southern Hispanic, as well as those inmates associated with White and Southern Hispanic disruptive groups. Normal personal property and Legal property delivery for all Level IV White and Southern Hispanic as well as those inmates associated with White and Southern Hispanic disruptive groups. Normal packages/special purchases and property delivery for the remaining inmate population.

**NA/AA & Men's Group:** No NA/AA for all Level IV White and Southern Hispanic, as well as those inmates associated with White and Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8. Normal for the remaining Level-IV inmate population. Normal for all Dorm inmates.

**Escorts:** All Level IV White and Southern Hispanic as well as those inmates associated with White, Southern Hispanic disruptive groups, and all Black and Northern Hispanic inmates housed in Blocks 5-8, and those celled with them, as well as those inmates associated with Black and Northern Hispanic disruptive groups housed in Blocks 5-8, will be escorted UNRESTRAINED within the Facility. **However, there will be no simultaneous White, Southern Hispanic, or Black and Northern Hispanic inmate movement to occur in any location within C-Facility.** All Level IV, Level I & II inmates will be placed in handcuffs behind their back when departing the Facility.

No White and Southern Hispanic, or Northern Hispanic and Southern Hispanic, or Black and Northern Hispanic inmate simultaneous movement is to occur in any location within C-Facility. Northern Hispanic inmates will be housed only in Blocks: 5, 6, 7 and 8. Southern Hispanic inmates will be housed only in Blocks: 1, 2, 3 and 4.

Note: Disruptive Group Designation is based upon Staff observation and Suspicion of Disruptive Group activity.


**S. SHANNON**
Facility Captain
C-Facility, CSP-Sacramento

State of California
Case 2:11-cv-03000-KJN    Document 1    Filed 11/10/11    Page 25 of 62
Department of Corrections and Rehabilitation
SECOND & THIRD WATCH CONTROL OFFICERS WILL
READ THIS MEMO OVER PUBLIC ADDRESS SYSTEM

# MEMORANDUM

*LAST REVISED: 7/18/2011 @ 3:12 PM*

Date:    July 18, 2011

To:      **C-FACILITY STAFF AND INMATE POPULATION**

From     California State Prison-Sacramento, Represa, CA. 95671

Subject: **C-FACILITY OPERATIONS EFFECTIVE, MONDAY, JULY 18, 2011, UNTIL FURTHER NOTICE**

On Monday, July 18, 2011, during second watch, a Battery on an Inmate occurred in C Facility 4 Block involving the Blood Disruptive Group. As a result, **all inmates associated with the Blood disruptive group will remain on Modified Program until further notice.**

On December 1, 2010, during the second watch shower program in C-7 Block, two Northern Hispanic inmates committed a Battery with a Weapon on a Black inmate. Due to the severity of the incident and ongoing racial tension between the groups involved, **all Level-IV Northern Hispanic inmates, as well as those inmates associated with the Crip and Blood disruptive groups housed in Blocks 5-8 will remain on Modified Program until further notice.**

On November 6, 2010, during the third watch shower program, four Black inmates (two Crips, two Bloods), along with two Northern Hispanic inmates were involved in a riot in the B and C section dayrooms of C-5 Block.

On Tuesday, September 7, 2010, during the morning worker-release, two Northern Hispanic inmates attempted to murder a Black inmate in the C Facility 5 Block C Section dayroom. As a result, all Black and Northern Hispanic inmates housed in Blocks 5-8 were placed on Modified Program. All the affected inmates were placed on restrained escorts, controlled-restrained showers, with <u>no</u> simultaneous movement of Black or Northern Hispanic inmates within the facility.

○ Indicates Change

**Feeding:**    Cell feeding for all Level IV inmates. Normal for all Dorm inmates.

**Work &**      No work for those inmates on Modified Program. Inmates on Modified Program assigned to
**Education:**  education will have education materials delivered to their cell by education staff.
**○**           **Note: No work for those inmates associated with the Blood disruptive group housed in Blocks 1-8. Inmates housed in Blocks 1-4, as well as those inmates associated with the Crip disruptive group housed in Blocks 5-8 on the current release list, who are assigned to work in Blocks 5-8. Dining Rooms 3 & 4 or the Small-Side yard crew will report to work based on their current assignment.**
                Normal work and education for the remaining inmate population.

**Yard:**       No yard for all inmates on Modified Program. Inmates associated with the Crip and Blood disruptive group on Modified Program in Blocks 5-8 will have access to the concrete exercise yard per the established schedule. Normal yard for the remaining inmate population.

**Telephone:**  Inmates on Modified Program will not have access to the telephone. Normal telephone for the remaining inmate population.

**Showers:**    Controlled **RESTRAINED** showers on Third Watch for all **Northern Hispanic** inmates; Controlled **UNRESTRAINED** showers on Third Watch for all remaining inmates on Modified Program: *First Tier on Monday, Wednesday, and Friday; Second Tier on Tuesday, Thursday, and Saturday.*

                <u>**All section doors will remain closed during shower program.**</u>

                Normal shower program for the remaining inmate population.

# EXHIBIT COVER PAGE

| 4 |

EXHIBIT

Description of this Exhibit:

**DECLARATION OF CHARLES JONES JR.**

Number of pages to this Exhibit:  1 page.

JURISDICTION:  (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Applellate Court |
| ☐ | State Supreme Court |
| XX | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

# DECLARATION OF CHARLES JONES JR.

I, Charles Jones Jr., declare as follows under the penalty of perjury;

1) That I am the plaintiff in this case and am acting in propria persona,

2) That I was on lock down at C.S.P.-Sacramento when I was assaulted, stabbed and attacked with a razor while on C-Facility,

3) That I was attacked as a direct result of correctional officers failure to follow the lock down procedures here at C.S.P.-Sacramento,

4) That on December 1, 2010 I was let out of my cell for my lock down shower,

5) That after appromitaley three or four minutes in the shower I noticed two Northern Hispanic inmates were climbing the stairs while looking at me,

6) That one of the inmates reached into his pants and did take out a homeade knife,

7) That upon seeing this I exited the shower and ran down the opposite stairs,

8) That the two Northern Hispanic inmates began chasing me and followed me into the rotunda where they did corner me and began to stab me, beat me and slash at me with a home made straight razor,

9) That the tower c/o, Defendant Yang, closed the section door I had ran from and thereby trapped me in with the two Northern Hispanic inmates,

10) That eventually we were peppered sprayed and seperated, and

11) That I was then forced to kneel naked while cuffed and photographed and then taken to the medical area,

12) That at the time of the attack I was on lock down and the procedure was to not allow Northern Hispanic inmates and Black inmates to be simultaneously moved or have access to each other in the facility,

13) That the section door was to be secured until I was in the cell, and

14) That it was only as a result of the defendants failures that I was allowed to be attacked.

Charles Jones Jr.

Charles Jones Jr.

Declarant.

# EXHIBIT COVER PAGE

**5**

EXHIBIT

Description of this Exhibit:

**C/O'S HOM AND BROWNS INCIDENT REPORTS**

Number of pages to this Exhibit: 2 pages.

JURISDICTION:   (Check only one)

|  |  |
|---|---|
|  | Municipal Court |
|  | Superior Court |
|  | Applellate Court |
|  | State Supreme Court |
| XX | United States District Court |
|  | State Circuit Court |
|  | United States Supreme Court |
|  | Grand Jury |

-25-

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDCR 837-C (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE _1_ OF _1_

INCIDENT LOG NUMBER
SAC-FAC-10-12-0745

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| HDM | I | | 12/1/10 | 1050 HC |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 5240 | HCA #10 C/O | 9 YR. 10 MO | 12/1/10 | 7 BLOCK |

| RDO | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | | CCR SECTION / RULE | ☐ N/A |
|---|---|---|---|---|---|
| Hol | 0600/1400 | BATTERY ON AN I/M W/ WEAPON | | 3005 (d) | |

**YOUR ROLE**

☐ PRIMARY
☐ RESPONDER
☒ WITNESS
☐ VICTIM
☐ CAMERA

WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER)
(S) J. D. BROWN (S)

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)

**FORCE USED BY YOU**
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE

**FORCE OBSERVED BY YOU**
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☐ NONE

**WEAPONS AND SHOTS FIRED BY YOU**

NO:
☐ MINI-14
☐ 9 MM
☐ 38 CAL
☐ SHOTGUN
☐ HFWRS
☒ N/A

NO:
☐ 37MM
☐ 40 MM
☐ LL
☐ 40 MULTI
☐ BATON

TYPE:

**CHEMICAL AGENTS USE BY YOU**

TYPE:
☐ OC
☐ CN
☐ CS
☐ OTHER
☒ N/A

**EVIDENCE COLLECTED BY YOU**
YES ☐
NO ☒ N/A

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|
| | ☒ N/A | ☐ YES ☒ NO | ☒ YES ☐ NO |

**REPORTING STAFF INJURED**
YES ☐
NO ☒ N/A

| DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|
| | | ☐ UNKNOWN ☐ OTHER | ☒ NO |

**NARRATIVE:**

DEC. 1, 2010, AT APPROXIMATELY 1050 HRS. I WAS ASSIGNED TO POSITION #5240 4#10 C/O. I WAS IN THE C CLINIC AND I HANNOUNCED VIA THE INSTITUTIONAL DID TO "C" OBSERVATION TOWER THAT I HAVE NORTHERN INMATES RETURNING TO THE SMALL SIDE FROM THE CLINIC ARE WE CLEAR!! OBSERVATION TOWER ANNOUNCE YOU ARE CLEAR. I THEN HANNOUNCED THE INSTITUTIONAL RADIO TO 5 CONTROL, 6 CONTROL, 7 CONTROL D 8 CONTROL THAT WE HAVE NORTHERN I/MS RETURNING THE BLOCKS FROM THE CLINIC. OFFICER J.D. BROWN AND SELF ESCORTED THE I/MS BACK TO THEIR ASSIGN BLOCK RADIO 7 CONTROL BOOTH THAT YOU HAVE I/MS AT YOUR YARD 7 BLOCKS YARD DOOR WAS OPEN. I SAW THE I/MS ENTERED E BLOCK AND THE YARD DOOR WAS SECURED. OFFICER BROWN MYSELF CONTINUED WITH OUR ESCORT TO 5 AND 6 BLOCK. SEQUENT TO OUR ESCORT TO 5 BLOCK. 7 BLOCK HAD AN ALARM. DEC. 1/JRP 1/14 I/MS INCIDENT 5 BLOCK.

THIS NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | DATE |
|---|---|---|---|
| | C/O | | 12/1/10 |

| NAME/TITLE OF REVIEWER (PRINT) SIGNATURE | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| C/S SGT. | 12-01-10 | ☒ YES ☐ NO | ☐ YES ☒ NO | 12-01-10 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDCR 837-C (Rev 07/05)

PAGE | 1 | OF | 1

INCIDENT LOG NUMBER: SAC-FAC-10-12-0745

| NAME LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| Brown | J | D | 12-1-10 | 1050 HRS |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 2-5238 | HCA Escort # 8 | 23 yr 10 mo | 12-1-10 | C-7 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | ☐ N/A |
|---|---|---|---|---|
| S/S/M | 0600-1400 | Battery on Inmate w/ Weapon | 3005 D | |

**YOUR ROLE**
☐ PRIMARY
☒ RESPONDER
☒ WITNESS
☐ VICTIM
☐ CAMERA

WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER)
T. Horn C/o

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)

**FORCE USED BY YOU**
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE
**FORCE OBSERVED BY YOU**
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE

**WEAPONS AND SHOTS FIRED BY YOU**
NO:
☐ MINI-14
☐ 9 MM
☐ 38 CAL
☐ SHOTGUN
☒ N/A

NO: TYPE:
☐ 37MM
☐ 40 MM
☐ L8
☐ 40 MULT.
☐ HFWRS
☐ BATON

**CHEMICAL AGENTS USE BY YOU**
TYPE:
☐ OC
☐ CN
☐ CS
☐ OTHER
☒ N/A

**EVIDENCE COLLECTED BY YOU**
☐ YES
☒ NO    ☒ N/A

EVIDENCE DESCRIPTION

EVIDENCE DISPOSITION

BIO HAZARD
☐ YES
☒ NO

PPE
☒ YES
☐ NO

**REPORTING STAFF INJURED:**
☐ YES
☒ NO    ☒ N/A

DESCRIPTION OF INJURY

LOCATION TREATED /HOSPITAL / CLINIC
☒ N/A

FLUID EXPOSURE
☐ BLOOD
☐ OTHER
☒ N/A

SCIF 3301 / 3067 COMPLETED
☐ YES
☐ NO

**NARRATIVE:**

On 12-1-10 at approximately 1050 HRS while performing my duties at the C-Four HCA officer # 8 I assisted C/o T. Horn in escorting 9 inmates (1 white and 8 Northerners) back to their housing units (blocks 5 thru 7) from the C-Facility Clinic. A radio transmission was made by C/o T. Horn to Central tower and to each control booth officer that we were escorting whites and Northerners back to the blocks from the Clinic. 3 Northern inmates were escorted to 7 block the yard door opened the inmates entered the block the yard door closed. We proceeded to escort the remaining inmates up to 5 and 6 block. 2 Northern entered 6 block. A code 1 alarm was announced in 7 block. We remained with the 4 inmates from 5 block (3 Northerners and 1 white). The inmates remained down on the yard in front of 5 block because 5 control announced that it wasn't clear (via radio) to bring them in. After it was clear we escorted them into 5 block then we proceeded to 7 block. to

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE C/o | BADGE # | DATE 12-1-10 |
|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) PHELPS SGT. | DATE RECEIVED 12-01-10 | APPROVED ☒ YES ☐ NO   CLARIFICATION NEEDED ☐ YES ☒ NO | DATE 12-01-10 |
|---|---|---|---|

# EXHIBIT COVER PAGE

| 6 |
|---|

EXHIBIT

Description of this Exhibit:

**C/O YANG'S INCIDENT REPORT**

Number of pages to this Exhibit: 4 pages.

JURISDICTION:   (Check only one)

|       | Municipal Court |
|-------|-----------------|
|       | Superior Court |
|       | Appiellate Court |
|       | State Supreme Court |
| XX    | United States District Court |
|       | State Circuit Court |
|       | United States Supreme Court |
|       | Grand Jury |

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT
PART C- STAFF REPORT
CDCR 837-C (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE __1__ OF __2__

| INCIDENT LOG NUMBER |
|---|
| SAC-FAC-10-12-0745 |

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| YANG | C | | 12/01/10 | 1050 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 272049 | C FAC 7 BLK CNTRL | 3 YR. 8 MO. | 12/01/10 | FAC C- 7 BLK A SECTION |

| DOS | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | ☐ N/A |
|---|---|---|---|---|
| AT/SUN | 0630-1430 | BATTERY ON AN INMATE W/ WEAPON | 3005 (d,1) | |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☑ PRIMARY | (S) T. Hom | (S) Ortega (V-36268) |
| ☐ RESPONDER | (S) J. Brown | (S) Martinez (G-21920) |
| ☐ WITNESS | | (S) McDonald (F-08967) |
| ☐ VICTIM | | (V) (Jones) (F-93018) |
| ☐ CAMERA | | |

| FORCE USED BY YOU | WEAPONS AND SHOTS FIRED BY YOU | | CHEMICAL AGENTS USE BY YOU |
|---|---|---|---|
| ☐ WEAPON | NO: | NO: TYPE: | TYPE: |
| ☐ PHYSICAL | ☐ MINI-14 ___ | ☐ 37MM ___ | ☐ OC |
| ☐ CHEMICAL | ☐ 9 MM ___ | ☐ 40 MM ___ | ☐ CN |
| NONE | ☐ 38 CAL ___ | ☐ LB ___ | ☐ CS |
| FORCE OBSERVED BY YOU | ☐ SHOTGUN ___ | ☐ 40 MULTI ___ | ☐ OTHER: ___ |
| WEAPON | | ☐ HFWRS | |
| PHYSICAL | ☒ N/A | ☐ BATON | ☒ N/A |
| CHEMICAL | | | |
| NONE | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| YES | | | ☐ YES | ☒ YES |
| NO | ☒ N/A | ☒ N/A | ☒ NO | ☐ NO |

| REPORTING IF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| YES | | | ☐ BODILY  ☒ N/A | ☐ YES |
| NO | ☒ N/A | ☒ N/A | ☐ UNKNOWN  ☐ OTHER: ___ | ☒ NO |

NARRATIVE:
Wednesday, December 01, 2010, While assigned to post # 272049, C Facility 7 Block Control at approximately hours while conducting my duties C Facility Medical Escort Officers J. Brown and T. Hom escorted inmates ga (V-36268), McDonald (F08967) and Martinez (G-21920) into the C-7 Block rotunda after which I secured the door. Moments later, I opened the "A" section door in order to allow the three Inmates to return to their assigned During the course of the days activities, I was also running the shower Program. I inadvertently did not observe te Jones who was still showering on the top tier. I was maintaining constant observation of the three returning es when I noticed both Ortega and Martinez look up towards the top tier shower and discover Jones who was howering. Ortega and Martinez immediately started towards and walked up the left side staircase towards Jones observed the two approaching inmates and began to run to the right side staircase to escape from Ortega Martinez. I immediately activated my audible alarm and notified the block staff. I yelled for Ortega and nez to get down on the ground. Ortega and Martinez refused to comply with my verbal commands. Jones ran "A" section closely followed by Ortega and Martinez. Jones was trapped at the Yard Door where Ortega and nez began battering Jones. I opened the yard door for responding staff to arrive. Upon opening the yard door ran outside and someone sprayed Ortega, Martinez, and Jones with O. C. Pepper spray. Responding staff -

CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | DATE |
|---|---|---|---|
| | C/O | | 12/01/10 |

| NAME TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLASSIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | 12-1-17 | ☒ YES ☐ NO | ☒ YES ☒ NO | 12-1-10 |

50

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
PART C1- SUPPLEMENT
CDCR 837-C1 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE __2__ OF __2__

INCIDENT LOG NUMBER:
SAC-FAC-12-10-0745

| NAME: LAST | FIRST | MI |
|---|---|---|
| YANG | C | |

TYPE OF INFORMATION:

[X] CONTINUATION OF REPORT    [ ] CLARIFICATION OF REPORT    [ ] ADDITIONAL INFORMATION

NARRATIVE:

arrived in time to restrain inmates Ortega, Martinez and Jones. Jones was escorted to the C Facility Treatment and Triage Area for medical treatment for any injuries that he may have received as a direct result of this incident.

[ ] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| | C/O | | | 12/01/10 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| A. D. Jones, Sgt. M Jones | 12-1-10 | [X] YES [ ] NO | [ ] YES [X] NO | 12-1-10 |

Original Incident Package    Copy Reporting Employee    Copy Reviewing Supervisor

CRIME / INCIDENT REPORT
PARTC2 - REVIEW NOTICE
CDCR 837-C2 (REV. 10/06)

| | Page 1 of 1 | INCIDENT LOG NUMBER SAC-FAC-10-12-0745 |
| --- | --- | --- |
| NAME LAST YANG | FIRST C | MI | INCIDENT DATE: 12/01/2010 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

[✓] PREPARE a CDCR 837-C1 Supplement report clarifying the issues listed below

[ ] PREPARE a CDCR 837-C1 Supplement report providing additional information regarding the issues listed below.

[ ] PREPARE a CDCR 837-A1 Supplement report clarifying the issues listed below.

[ ] PREPARE a CDCR 837-A1 Supplement report to ammend the information regarding the issues listed below.

DUE BY: 12/09/2010          RETURN TO:  LT J. CLOUGH

1. Where were the floor Officers located in the block during the incident?

2. How did you notify the floor Officers of the incident?

3. Did you observe any of the inmates using any weapons?

4. You refer to the actions of ORTEGA and MARTINEZ as "battering". Describe, specifically, the actions of each inmate during the attack you observed.

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT
PART C1- SUPPLEMENT
CDCR 837-C1 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE ___1___ OF ___1___

INCIDENT LOG NUMBER
SAC-FAC-10-12-0745

NAME: LAST
YANG

FIRST
C.

MI

TYPE OF INFORMATION:
☐ CONTINUATION OF REPORT    ☑ CLARIFICATION OF REPORT    ☐ ADDITIONAL INFORMATION

NARRATIVE:

During the incident my floor officers were doing closed A count in C-Section 7 block, but were locked in C-section due to A-section being opened.

2. I was not able to notify my floor officers immediately but yelled out that there is a fight in the rotunda and thought they would hear along with the block alarm.

3. I did not observe any weapon from my position during the incident.

4. From my position I saw inmate Ortega and Martinez swinging in a forward motion towards inmate Jones. They appeared to be punching him in the upper body area with clinch fist.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL PART C1

SIGNATURE OF REPORTING STAFF

TITLE
C/o

BADGE #

DATE
12/6/10

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)    DATE RECEIVED    APPROVED    CLARIFICATION NEEDED    DATE

# EXHIBIT COVER PAGE

7

EXHIBIT

Description of this Exhibit:

## C/O SCRUGGS INCIDENT REPORT

Number of pages to this Exhibit: $2$ pages.

JURISDICTION:   (Check only one)

|  | Municipal Court |
| --- | --- |
|  | Superior Court |
|  | Appllellate Court |
|  | State Supreme Court |
| XX | United States District Court |
|  | State Circuit Court |
|  | United States Supreme Court |
|  | Grand Jury |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CRIME / INCIDENT REPORT
PART C – STAFF REPORT
CDCR 837-C (Rev. 05/08)

Page __1__ of __2__

| INCIDENT LOG NUMBER |
|---|
| SAC-FAC-10-12-0745 |

| NAME LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| SCRUGGS | B | P | 12/01/2010 | 1050 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 272077 | C S&E #1 | 10 YR. 9 MO | 12/01/2010 | C-7 ROTUNDA |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| S/M | 0600-1400 | BATTERY ON AN INMATE W/WEAPON | 3005d |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY | (S) C/O R. AHRENS | (V) JONES  (F-93018) |
| ☒ RESPONDER | (S) C/O G. PREMOCK | (S) MARTINEZ (G-21920) |
| ☐ WITNESS | (S) C/O E. WALKER | (S) ORTEGA  (V-36268) |
| ☐ VICTIM | (S) LVN K. ADAMS | |
| ☐ CAMERA | | |
| ☐ SCRIBE | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE |||||
|---|---|---|---|---|---|
| | PHYSICAL: | WEAPON: | WARNING: | EFFECT: | LAUNCHER: EFFECT: | CHEMICAL / TYPE: |
| ☐ PHYSICAL | ☒ EXPANDABLE BATON | ☒ MINI 14 | | | ☒ 37MM | ☒ N/A |
| ☐ CHEMICAL | ☐ RESTRAINT TECHNIQUES | ☒ .38 CAL | | | ☒ L8 | ☐ OC |
| ☐ WEAPON | | ☒ 9MM | | | ☒ 40MM | ☐ CN |
| ☒ NONE | | ☒ SHOTGUN | | | ☒ 40MM MULTI | ☐ CS |
| FORCE OBSERVED BY YOU | ☒ HANDS | ☒ X10 | | | ☐ HFWRS | ☐ OTHER |
| ☒ PHYSICAL | ☐ FEET | | | | | |
| ☐ CHEMICAL | ☐ OTHER FORCE NOT LISTED ABOVE: | | | | | |
| ☐ WEAPON | | | | | | |
| ☐ NONE | | | | | | |

| | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| EVIDENCE COLLECTED BY | One C-DR Disc containing Twenty (20) Photographs | ☒ Secured in Evidence Locker #C4 | ☐ Yes  ☒ No | ☒ Yes  ☐ No |

| | | DESCRIPTION OF INJURY | LOCATION TREATED | FLUID EXPOSURE | SCIF3301/3067 |
|---|---|---|---|---|---|
| ☐ No | ☒ N/A | | ☒ N/A | ☐ BODILY  ☒ N/A | ☐ Yes |
| REPORTING STAFF INJURED | | | | ☐ UNKNOWN | ☒ No |
| ☐ Yes | | | | ☐ OTHER | |
| ☒ No | | | | | |

NARRATIVE:

   On December 01, 2010, at approximately 1050 hours, while performing my duties as C-Facility, S&E #1 Officer, I responded to a Code 1 Alarm in C-7 Block. I observed Officer R. Ahrens (C-8 Floor Officer #2) exiting the open C-7 Yard door with both his hands grasped around the upper left arm of nude black inmate, later identified by CDCR PHOTO ID, as JONES (F-93018). Officer R. Ahrens pulled JONES's by his upper left arm away from the C-7 Yard door and down on to the grass area in front of C-7 Block. I entered C-7 Block and observed two inmates, later identified by CDCR PHOTO ID, as MARTINEZ (G-21920) and ORTEGA (V-36268) lying face down on the floor immediately inside the C-7 Yard door. Both inmates had OC pepper spray on their faces and upper body areas. I observed Officer G. Premock (C-4 Dining Room Officer) standing in the C-4 Dining Room doorway, which is adjacent to the C-7 Block door, pointing an MK-9 OC Pepper Spray canister in the direction of MARTINEZ and ORTEGA. An inmate manufactured weapon was lying on the floor in front of Officer G. Premock. I handcuffed MARTINEZ behind his back and conducted a clothed body search with negative results. I escorted MARTINEZ to the C Pedestrian Sally Port and secured him holding cell #C6.

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| | CORRECTIONAL OFFICER | | | 12/01/2010 |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
| | | ☒ Yes  ☐ No | ☐ Yes  ☒ No | |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CRIME / INCIDENT REPORT

PART C1 – SUPPLEMENT

CDCR 837-C1 (Rev. 05/08)

Page 2 of 2

INCIDENT LOG NUMBER

SAC-FAC-10-12-0745

| NAME: LAST | FIRST | MI |
|---|---|---|
| SCRUGGS | E. | P |

TYPE OF INFORMATION

[X] CONTINUATION OF REPORT   [ ] ADDITIONAL INFORMATION   [ ] CLARIFICATION

Officer E. Walker (S&I Officer #4) photographed inmate MARTINEZ. I escorted MARTINEZ from holding cell #C6 to the decontamination shower. Upon completion of the decontamination process I escorted MARTINEZ back to holding cell #C6. Nurse K. Adams (C Facility Duty LVN) conducted a medical evaluation on MARTINEZ and completed a CDCR 7219 report. I obtained a digital camera and photographed the onfiscated clothing inmate MARTINEZ was wearing during the incident.

Photograph #1 Depicts MARTINEZ's confiscated clothing displayed out on the grass near the decontamination shower. MARTINEZ's CDCR ID card is lying on top of his white boxer shorts. OC Pepper Spray stains and feces stains are visible on several articles of clothing.

Photograph #2 Depicts MARTINEZ's CDCR ID card lying on top of his boxer shorts. The boxer shorts are turned inside out. A significant amount of feces is visible on the inside rear area of the shorts.

Photograph #3 Depicts MARTINEZ's Dickie brand T-Shirt with OC Pepper Spray stains visible on the neck and shoulder area. Feces stains are visible on the bottom outside seam of the T-Shirt next of the Dickies emblem.

Photograph #4 Depicts MARTINEZ's pants turned inside out. Feces is visible on the inside rear area and down the one leg pant leg.

Photograph #5 Depicts the back of MARTINEZ's outer blue shirt with three small feces stains visible along the . . . .

Photograph#6 Depicts MARTINEZ's tank top shirt with OC Pepper Spray stains along the neck area and small amount of feces along the bottom seam.

Photograph#7 Depicts MARTINEZ's pair of shoes.

I placed the confiscated clothing inside a biohazard containment bag and disposed of it in accordance with institutional procedures. I sealed one CD-R Disc, containing twenty (20) photographs of the incident, inside an evidence envelope. I secured the sealed envelope inside evidence locker #C4, located in the C Facility Control Room.

CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| | CORRECTIONAL OFFICER | | | 12/01/2010 |

# EXHIBIT COVER PAGE

<div style="border:1px solid">

8

</div>

EXHIBIT

Description of this Exhibit:

**C/O ECK'S INCIDENT REPORT**

Number of pages to this Exhibit: 2 pages.

JURISDICTION:   (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Applellate Court |
| ☐ | State Supreme Court |
| XX | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT
PART C - STAFF REPORT
CDCR 837-C (Rev. 05/08)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

INCIDENT LOG NUMBER
SAC-FAC-10-12-0745

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| ECK | B. | D. | 12-01-10 | 1050 HRS |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 272053 | C-7 FLOOR C/O | 23 YR.   MO. | 12-01-10 | C-7 BLOCK ROTUNDA |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| F/S | 0630-1430 | BATTERY ON AN INMATE, WITH WEAPON | 3005 (D) |

YOUR ROLE
- [ ] PRIMARY
- [ ] RESPONDER
- [X] WITNESS
- [ ] VICTIM
- [ ] CAMERA
- [ ] SCRIBE

WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER)
(S) G. DREMOCK
(S) R. AHRENS
(O) A. PIZARRO

INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)
(S) ORTEGA (V-36268)
(S) MARTINEZ (G-21920)
(V) JONES (F-93018)

FORCE USED BY YOU
- [ ] PHYSICAL
- [ ] CHEMICAL
- [ ] WEAPON
- [X] NONE

FORCE OBSERVED BY YOU
- [ ] PHYSICAL
- [X] CHEMICAL
- [ ] WEAPON
- [ ] NONE

FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE

| PHYSICAL: | WEAPON: | WARNING: | EFFECT: | LAUNCHER: | EFFECT: | CHEMICAL / TYPE: |
|---|---|---|---|---|---|---|
| [ ] EXPANDABLE BATON | [X] MINI 14 | | | [ ] 37MM | | [ ] N/A |
| [ ] RESTRAINT TECHNIQUES | [ ] .38 CAL | | | [ ] LB | | [X] OC |
| | [ ] 9MM | | | [ ] 40MM | | [ ] CN |
| [ ] HANDS | [ ] SHOTGUN | | | [ ] 40MM MULTI | | [ ] CS |
| [ ] FEET | [ ] X16 | | | [ ] HFWRS | | [ ] OTHER: |

[ ] OTHER FORCE NOT LISTED ABOVE:

EVIDENCE COLLECTED BY

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|
| [X] N/A | [X] N/A | [X] Yes | [X] Yes |
| | | [ ] No | [ ] No |

| DESCRIPTION OF INJURY | LOCATION TREATED HOSPITAL / CLINIC | FLUID EXPOSURE | CONFINEMENT COMPLETED |
|---|---|---|---|
| | | [ ] BLOOD  [X] N/A | |
| | | [ ] UNKNOWN | |
| | | [ ] OTHER | [X] No |

REPORTING STAFF INJURED
- [ ] Yes
- [X] No

Narrative: ON 12-01-10, AT APPROXIMATELY 1050 HOURS, C/O A. PIZARRO AND I WERE COMPLETING OUR CLOSE CUSTODY COUNT IN C-7 BLOCK. OFFICER PIZARRO AND I WERE STANDING IN THE C-SECTION DAY ROOM WAITING TO EXIT C-SECTION AND RETURN TO THE UNIT OFFICE. WHILE WE WERE AT THE C-SECTION DOOR, WAITING FOR THE C-7 CONTROL BOOTH OFFICER TO OPEN IT SO THAT WE COULD EXIT, WE HEARD AN INSTITUTIONAL ALARM SOUND. OFFICER PIZARRO AND I COULD NOT DETERMINE WHERE THE ALARM SOUND WAS COMING FROM. AS WE CONTINUED TO KNOCK ON THE THE C-SECTION DOOR TO ATTEMPT TO EXIT, I HEARD AN INMATE SCREAMING. AS I LOOKED INTO THE

[X] CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| | C/O | | | 12-01-10 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | | | | |

CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

CRIME / INCIDENT REPORT
RTC1 - SUPPLEMENT
CR 837-C1 (REV. 10/06)

| Page 2 of 2 | INCIDENT LOG NUMBER: SAC-FAC-10-12-0745 |

NAME  LAST: BCK   FIRST: B   MI: D.

TYPE OF INFORMATION
☒ CONTINUATION OF REPORT   ☐ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

rotunda from C-section door. I saw inmate JONES (F-93018), housed in FW FA-7106, run by the C-section door, partially dressed, and making screaming noises. I then saw that he was being chased by two other inmates. I observed inmate ORTEGA (V-86218), housed in cell FC-7208, chase JONES into the corner of the rotunda by the dining room door nearest to C-section. ORTEGA and MARTINEZ had JONES pinned against the wall and were taking him repeatedly. Both ORTEGA and MARTINEZ were actively involved in assaulting JONES. When responding staff arrived and the dining room and yard doors were opened, I observed Officer G. DREMOCK ... the involved inmates. At the same time, I observed Officer R. BULLENS utilize his O.C. pepper spray ... the yard door, striking the involved inmate JONES ...

B: My identification of the involved inmates comes from daily and continued contact with these inmates based on their current housing assignments in my assigned housing unit.

# EXHIBIT COVER PAGE

**9**

EXHIBIT

Description of this Exhibit:

C/O PEMCOCKS INCIDENT REPORT

Number of pages to this Exhibit:  3  pages.

JURISDICTION:   (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Appllelate Court |
| ☐ | State Supreme Court |
| XX | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART C- STAFF REPORT
CDCR 837-C (Rev. 07/05)

PAGE ___1___ OF ___1___

| INCIDENT LOG NUMBER |
| --- |
| SAC-FAC-10-12-0745 |

| NAME LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
| --- | --- | --- | --- | --- |
| PREMOCK | G. | E | 12-1-10 | 1050 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
| --- | --- | --- | --- | --- |
| 272075 | C4 DINING OFFICER | 5 YR. 4 MO. | 12-1-10 | C-7 BLOCK ROTUNDA |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | ☐ N/A |
| --- | --- | --- | --- | --- |
| M/T | 0400/1200 | BATTERY ON I/M W/WEAPON | 3005(d)(1) | |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) | |
| --- | --- | --- | --- |
| ☒ PRIMARY | .................................. | V-JONES, F93,018 | |
| ☐ RESPONDER | .................................. | S-ORTEGA, V3268 | |
| ☐ WITNESS | .................................. | S-MARTINEZ, G21920 | |
| ☐ VICTIM | .................................. | | |
| ☐ CAMERA | .................................. | | |

| FORCE USED BY YOU | WEAPONS AND SHOTS FIRED BY YOU | | CHEMICAL AGENTS USE BY YOU | |
| --- | --- | --- | --- | --- |
| ☐ WEAPON | NO: | NO:  TYPE: | TYPE: | |
| ☐ PHYSICAL | ☐ MINI-14 ____ | ☐ 37MM ____ | ☒ OC ____ | |
| ☒ CHEMICAL | ☐ 9 MM ____ | ☐ 40 MM ____ | ☐ CN ____ | |
| ☐ NONE | ☐ 38 CAL ____ | ☐ LB ____ | ☐ CS ____ | |
| FORCE OBSERVED BY YOU | ☐ SHOTGUN ____ | ☐ 40 MULTI ____ | ☐ OTHER: ____ | |
| ☐ WEAPON | | ☐ HFWRS | | |
| ☒ PHYSICAL | ☒ N/A | ☐ BATON | ☐ N/A | |
| ☐ CHEMICAL | | | | |
| ☒ NONE | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
| --- | --- | --- | --- | --- |
| ☒ YES | I/M MANUFACTURED WEAPON | SECU PROCESSED & SECURED INTO C-FACILITY CONTROL EVIDENCE LOCKER #1 | ☒ YES | ☒ YES |
| ☐ NO | ☐ N/A | ☐ N/A LOCKER #1 | ☐ NO | ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
| --- | --- | --- | --- | --- |
| ☐ YES | | | ☐ BLOOD ☐ N/A | ☐ YES |
| ☒ NO | | | ☐ UNKNOWN | ☒ NO |
| | ☒ N/A | ☒ N/A | ☐ OTHER ____ | |

NARRATIVE:

ON 12-1-10 AT APPROXIMATELY 1050 HOURS, WHILE ASSIGNED AS THE C-4 DINING OFFICER POST # 272075, I RESPONDED TO AN ALARM IN C-7 BLOCK ROTUNDA. WHERE I SAW INMATES ORTEGA, V3268 AND INMATE MARTINEZ G21920 FC7-208 ATTACKING INMATE JONES, F93018, FC7-106 SPONTANEOUSLY, I ORDERED THE INMATES TO "STOP AND GET DOWN". THE INMATES DID NOT COMPLY. I USED MY MK-9 OC. PEPPER SPRAY AND SPRAYED ORTEGA, MARTINEZ, AND JONES. THE INMATES GP. AFTER ABOUT 10 SECONDS THE AP MARTINEZ AND ORTEGA. FELL TO THE GROUND THE INMATE JONES WENT OUT THE C-7 YARD DOOR. I OBSERVED A FIVE INCH METAL INMATE MANUFACTURED WEAPON NEXT TO THE C-7 BLOCK DINING DOOR. I SECURED THE WEAPON. THE WEAPON WAS PROCESSED AND SECURED INTO THE C-FACILITY CONTROL EVIDENCE LOCKER # 1 AT 1215 HOURS. I PHOTOGRAPHED THE WEAPON WHICH APPEARED TO BE MANUFACTURED FROM METAL SHARPENED TO A POINT, WITH A PLASTIC HANDLE, PLACED INTO EVIDENCE # (1) PICTURE.

CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | | DATE |
| --- | --- | --- | --- | --- |
| G. Premock | C/O | | ID # | 12-1-10 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
| --- | --- | --- | --- | --- |
| PHELPS SGT. B. Phelps | 12-1-10 | ☒ YES ☐ NO | ☒ YES ☐ NO | 12-1-10 |

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT
PART C1- SUPPLEMENT
DCR 837-C1 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE __/__ OF __/__

INCIDENT LOG NUMBER
SAC-FAC-10-12-0745

NAME: LAST
PREMOCK

FIRST
6

MI
E

TYPE OF INFORMATION:
☐ CONTINUATION OF REPORT      ☑ CLARIFICATION OF REPORT      ☐ ADDITIONAL INFORMATION

NARRATIVE:

1 THE DINING DOOR WAS OPENED AT APPROXIMATELY 1050 HOURS

2) I OBSERVED INMATES ORTEGA AND MARTINEZ ATTACK INMATE JONES
USING BOTH ARMS TO HIT JONES ON HIS HEAD, NECK, CHEST, AND ARMS

3) INMATES ORTEGA AND MARTINEZ CONTINUED TO ATTACK INMATE
JONES AFTER I UTILIZED MY O.C. PEPPER SPRAY

4) I WAS APPROXIMATELY 2 FEET FROM THE INMATES WHEN I
UTILIZED MY O.C. PEPPER SPRAY

CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL PART C1

SIGNATURE OF REPORTING STAFF

TITLE
C/O

BADGE #

DATE
12/8/10

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)   DATE RECEIVED   APPROVED   CLARIFICATION NEEDED   DATE

CRIME / INCIDENT REPORT
PARTC2 - REVIEW NOTICE
CDCR 837-C2 (REV. 10/06)

| | Page 1 of 1 | INCIDENT LOG NUMBER: SAC-FAC-10-12-0745 | |
|---|---|---|---|
| NAME LAST PREMOCK | FIRST G | MI E | INCIDENT DATE: 12/01/2010 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

☑ PREPARE a CDCR 837-C1 Supplement report clarifying the issues listed below.

☐ PREPARE a CDCR 837-C1 Supplement report providing additional information regarding the issues listed below.

☐ PREPARE a CDCR 837-A1 Supplement report clarifying the issues listed below.

☐ PREPARE a CDCR 837-A1 Supplement report to ammend the information regarding the issues listed below.

DUE BY:  12/09/2010          RETURN TO:  LT J. CLOUGH

1  At what time during the incident was the dining door opened?

2. Specifically describe the actions (arm motions, etc) of ORTEGA and MARTINEZ during the attack on JONES.

3. What did ORTEGA and MARTINEZ do during the 10 seconds between your application of OC and when they proned out?

4. Approximately what distance were you from the combatants when you sprayed them with OC?

# EXHIBIT COVER PAGE

<div style="border:1px solid">

## 10

</div>

EXHIBIT

Description of this Exhibit:

### MEDICAL REPORT BY DOCTOR MA

Number of pages to this Exhibit: 1 page

JURISDICTION:   (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Applellate Court |
| ☐ | State Supreme Court |
| XX | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | ON THE JOB INJURY | DATE |
|---|---|---|---|---|
| CSP-SAC | C Facility | (INJURY) / USE OF FORCE / (UNUSUAL OCCURRENCE) | PRE AD/SEG ADMISSION | 12/1/10 |

| THIS SECTION FOR INMATE ONLY | NAME LAST | FIRST | CDC NUMBER | HOUSING LOC | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| | Jones , C | | F93018 | C3/102 | N/A |

| THIS SECTION FOR STAFF ONLY | NAME LAST | FIRST | BADGE # N/A | RANK/CLASS N/A | ASSIGNMENT/RDOs N/A |
|---|---|---|---|---|---|
| | N/A | | | | |

| THIS SECTION FOR VISITOR ONLY | NAME LAST | FIRST MIDDLE | DOB N/A | OCCUPATION N/A |
|---|---|---|---|---|
| | N/A | N/A | | |

| | HOME ADDRESS N/A | STATE | ZIP | HOME PHONE N/A |
|---|---|---|---|---|

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) |
|---|---|---|
| C Block Cfa | 1050 | Custody |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL (circle) | AGE | RACE | SEX |
|---|---|---|---|---|---|---|
| | | Gang Cio, | (AMBULATORY) / LITTER / WHEELCHAIR / ON SITE | 46 | B | M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

" I was in the shower, I came out the shower and I don't know "



V/S 155/88, 100% RA / 115  BS 114

| INJURIES FOUND? | YES | NO |
|---|---|---|
| Abrasion/Scratch | 1 | |
| Active Bleeding | | 2 |
| Broken Bone | 3 | |
| Bruise/Discolored Area | 4 | |
| Burn | 5 | |
| Dislocation | 6 | |
| Dried Blood | 7 | |
| Fresh Tattoo | 8 | |
| Cut/Laceration/Slash | 9 | |
| O.C. Spray Area | 10 | |
| Protrusion | 12 | |
| Puncture | 13 | |
| Reddened Area | 14 | |
| Skin Flap | 15 | |
| Swollen Area | 16 | |
| Other | 17 | |
| | 18 | |
| | 19 | |

| O.C. SPRAY EXPOSURE? | YES / NO |
|---|---|
| DECONTAMINATED? | YES / NO |
| Self-decontamination instructions given? | YES / NO |
| Refused decontamination? | YES / NO |
| 15 min. checks | ✓ |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| RN 1055 | Dr. Ma 1055 |

MEDS/DISPOSITION
RLTC / 1100

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|
| Tamoton | | Sun / Mon |

# EXHIBIT COVER PAGE

<div>

11

</div>

EXHIBIT

Description of this Exhibit:

### 602 EXHAUSTION

Number of pages to this Exhibit: 12 pages.

JURISDICTION:   (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Applellate Court |
| ☐ | State Supreme Court |
| XX | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

OFFICE OF APPEALS

P. O. BOX 942883

SACRAMENTO, CA  94283-0001

## THIRD LEVEL APPEAL DECISION

**OCT 21 2011**

Date:

In re:    Charles Jones, F93018
California State Prison, Sacramento
P.O. Box 29
Represa, CA  95671

TLR Case No.: 1022166        Local Log No.: SAC-11-00062

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner K. Kostecky, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that staff failed to protect him. The appellant contends that the facility was on a modified program and when he was released from his cell for a shower, he was attacked by another inmate, with a weapon. The appellant asserts that the warden is responsible for establishing and maintaining a plan of operation to ensure his safety. The appellant requests to know how this happened and that Correctional Officer (CO) Yang apologize.

**II   SECOND LEVEL'S DECISION:** The reviewer found that there is evidence to support the appellant's claim that staff had violated CDCR policy. The reviewer found that the appellant was interviewed by Correctional Sergeant J. Hansen on February 5, 2011. During that interview, the appellant stated that Hispanic inmates attacked him, cut and stabbed him about eight times, and showed the scars to the interviewer. The appellant claims that the wounds he received were the result of staff negligence. The appellant also stated that the memorandum included with the appeal was inadvertently attached and should not be considered while reviewing this appeal. A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review the appellant's appeal has been handled as a Staff Complaint Appeal Inquiry.

The following witness was questioned: CO C. Yang. The inquiry is complete and it appears staff did violate CDCR policy regarding this issue. The appeal was granted in part at the Second Level of Review (SLR), in that an inquiry was conducted.

**III  THIRD LEVEL DECISION:** Appeal is denied.

**A.  FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an appeal inquiry has been completed at the SLR.

In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. However, upon completion of final review, or culmination of an inquiry, the appellant is to be notified by the respective body that an inquiry has been completed and whether the complaint was unsubstantiated or substantiated. In this case, the institution has reported the disposition to the appellant.

In this case, the institution has reported to the appellant that an inquiry was conducted and staff did not violate policy with respect to one or more of the issues raised in this matter. On August 29, 2011, the examiner reviewed the inquiry report and found that the information developed supported the findings reached by the institution. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff, the placement of documentation in a staff member's personnel file, or monetary compensation is beyond the scope of the appeals process. Therefore no relief is provided at the Third Level Review.

CHARLES JONES, F93018
CASE NO. 1022166
PAGE 2

**B.   BASIS FOR THE DECISION:**
California Penal Code Section: 832.5, 832.7, 832.8, 5058
California Code of Regulations, Title 15, Section: 3001, 3084.1, 3270, 3278, 3286, 3380

**C.   ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

K. KOSTECKY, Appeals Examiner
Office of Appeals
cc:       Warden, SAC
          Appeals Coordinator, SAC

D. FOSTON, Chief
Office of Appeals

_47-

**MATE/PAROLEE**
**PEAL FORM**
602 (12/87)

1 - Serely 3271 Responsibility
Location: Institution/Parole Region
1. __SAC · C__          1. __II · Conduct__
2. _____          2. _____
3391 - Conduct.

u may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification ommittee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | |
|---|---|---|
| Jones | F-93018 | Victim of Restraint C |

**A. Describe Problem:** Befor my Arrival; Activities Events, Riot between Blacks And Mixcan inmate: Demonstration, disturbances And disruption causing institution Lock down. As of this Date the incident involved Black And Mixcen inmate has Not been Resolved, inmate is concerned About Hostile Enemy incident, of this occurrence have happen before my Arrival; Concern About Safely; Its Now Extremely difficult And Danger Where is the Degree of Security that is set Forth in operation Manual I was Let out by C/O Yang, For Shower AFter About 4 . . . Several inma . . .

If you need more space, attach . . . inmate was Release by C/O . . .

**B. Action Requested:** Houl did this happen C/O Yang, Bam — Apalow . . .

**Inmate/Parolee Signature:** Charles A Jones Jr.

**C. INFORMAL LEVEL (Date Received: _____ )**

**Staff Response:** _____

**BYPASS**

**Staff Signature:** _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

**Signature:** _____
Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

12·23·10/5

2011 NOV 11 AM
APPEALS
CSP - SAC
RECEIVED

Durning ANY institution Lock downs inmate or [illegible]
that is the Primary objectives of the [illegible]
Are to Protect inmate committed to the Custody of C.D.C.R.

No Security Issues in Place including General Policy
Article #(2) Security, and Protection. 90 [illegible] did not
Considered under 3391 Alert, or Courteous and Professional
In Dealing with inment. Did Not Determine the Safely of
Other. Where is the degree of security [illegible]
In policy. mexcan inmate Attack me, Jones [illegible]
Inmate without Resaneds.

The Warden And Superintendent will establish [illegible]
A plan of operation, For discounary Aft A [illegible]
Events between Black and mexcan inmate [illegible]
Lock downs. Know movement Freeley muss be [illegible]
Resanes. downs ANY Escort. When the [illegible]
Involved, Victm of battery on inmate [illegible] been
Resolve by inmate or institution.

Note. Inmate Are Release Freely during Lock down
(1) [redacted] (2) [redacted]
Did Not Follow Resination on Procedures that [illegible]
The Action And Activities of inmate Judicial
Not Performed Obligation under [illegible]

C3-104

State of California,                                                                                    ATTACHMENT E-3

# **Memorandum**

Date   :   March 3, 2011

To   :   JONES (F-93018)
         CSP-SAC, FC3-104L

Subject:   **STAFF COMPLAINT RESPONSE - APPEAL #SAC-C-11-00062**

**APPEAL ISSUE**: In your appeal, you allege that a previously existing modified program, which you indicated left unresolved issues between the Black and Mexican inmates and that Officer Yang let you out of your cell for a shower, and approximately four minutes later, Officer Yang released several Hispanic inmates, who then battered you.   You stated that you want to know how this happened and want an apology from Officer Yang.

**DETERMINATION OF ISSUE**: A review of the allegations of staff misconduct presented in the written complaint has been completed.   Based upon this review your appeal has been handled as follows:

$\boxtimes$   REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (OIA).

### **SUMMARY FOR APPEAL INQUIRY:**
Sergeant J. Hansen interviewed you on February 5, 2011, and you stated the Hispanic inmates attacked you by cutting and stabbing you about eight times; you voluntarily pulled up your shirt to show me the wound scars. You stated that you received the wounds due to staff negligence. You clearly stated that the September 27, 2010 memorandum in your appeal packet was inadvertently included by an unidentified inmate helper, who prepared the appeal, except for your signature, and that it should be ignored for this appeal.

### **CHOOSE ONE:**

$\boxtimes$   This matter has been referred to the Office of Internal Affairs for follow-up and a possible investigation. If investigated, upon completion of that investigation you will be notified as to whether the allegations were SUSTAINED, NOT SUSTAINED, UNFOUNDED, and EXONERATED or that NO FINDING was possible. In the event that the matter is not investigated, but returned by OIA to the institution or region to conduct a Confidential Inquiry, you will be notified upon the completion of that inquiry as to whether it was determined that staff violated, or did not violate policy.

### **FINDINGS FOR AN APPEAL INQUIRY:**

Your appeal is PARTIALLY GRANTED at the $\boxtimes$ First level

$\boxtimes$   An inquiry into your allegation has been conducted.

-53-

California State Prison-Sacramento (SAC)
First-Level Reviewer's Response
Appeal Log #: SAC-C-11-00062
Inmate JONES (F-93018)
March 3, 2011
Page 2 of 2

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, the details of any inquiry will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. However, you have the right to be notified if after a review of your allegations, it is determined that staff violated CDCR policy. In this case:

☒ The inquiry is not yet complete

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

Please print and sign below:

_____
D. BAUGHMAN, AW/C Facility (A)

$3/11/11$
Date

# Memorandum

Date    May 11, 2011

To      **JONES, F-93018**
        FC3-104L

Subject:  **STAFF COMPLAINT RESPONSE - APPEAL # SAC-C-11-00062**

> **APPEAL ISSUE:** In your appeal, you allege that a previously existing modified program, which you indicated left unresolved issues between the Black and Mexican inmates and that Officer Yang let you out of your cell for a shower, and approximately four minutes later, Officer Yang released several Hispanic inmates, who then battered you. You stated that you want to know how this happened and want an apology from Officer Yang.

> **DETERMINATION OF ISSUE:** A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal has been handled as follows:

> ☒  PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
> ☐  REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (OIA).

> **SUMMARY FOR APPEAL INQUIRY:**

> You were interviewed on February 5, 2011, by Correctional Sergeant J. Hansen, and you stated the Hispanic inmates attacked you by cutting and stabbing you about eight times; you voluntarily pulled up your shirt to show the wound scars. You stated that you received the wounds due to staff negligence. You clearly stated that the September 27, 2010 memorandum in your appeal packet was inadvertently included by an unidentified inmate helper, who prepared the appeal, except for your signature, and that it should be ignored for this appeal.

> **FINDINGS FOR AN APPEAL INQUIRY:**
> Your appeal is PARTIALLY GRANTED at the ☐ First level ☒ Second level:

> ☒  An inquiry into your allegation has been conducted.

> ☐  An investigation is being conducted by the Office of Internal Affairs.

> ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, the details of any inquiry will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. However, you have the right to be notified if after a review of your allegations, it is determined that staff violated CDCR policy. In this case:

> ☐  The inquiry is not yet complete

> ☒  The inquiry is complete. Staff did violate CDCR Policy.

California State Prison Sacramento
Staff Complaint Response – Appeal Log #SAC-C-11-00062
JONES (F-93018)
May 11, 2011
Page 2 of 2

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

Please print and sign below:

TIM V. VIRGA/ _____          5-12-11
Warden (A)                                          Date

- 53 -

STATE OF CALIFORNIA                                DEPARTMENT OF CORRECTIONS AND REHABILITATION
RIGHTS AND RESPONSIBILITY STATEMENT
CDCR 1858 (Rev. 10/06)

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections and Rehabilitation has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

*Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:*

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER [this includes a departmental peace officer] FOR ANY IMPROPER POLICE [or peace] OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' [or inmates'/parolees'] COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN [or inmate/parolee] COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED |  |
|---|---|---|---|
| CHARLES  JONES   JR, | *Charles Jones* | 7/22/11 |  |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER | DATE SIGNED |
| CHARLES  JONES   JR. | *Charles Jones* | F-93018 | 7/22/11 |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED |  |

DISTRIBUTION
ORIGINAL -
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



June 20, 2011

JONES, CHARLES, F93018
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

RE: IAB# 1022166    SAC-11-00062    STAFF COMPLAINTS

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal as established in California Code of Regulations (CCR) Title 15, Article 8. The Branch examines and responds to inmate and parolee appeals, after the institution or parole region has responded at the Second Level of Appeal.

Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(7). Your appeal is missing necessary supporting documents as established in CCR 3084.3. All documents must be legible (If necessary, you may obtain copy(ies) of requested documents by sending a request with a signed trust withdrawal form to your assigned counselor). Your appeal is missing:

- CDCR Form 1858, Rights and Responsibilities Statement.

D. FOSTON, Chief
Inmate Appeals Branch

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

****PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE****

c 55

## INMATE/PAROLEE APPEAL SCREENING FORM

-PLEASE FOLLOW INSTRUCTIONS AND RETURN WITH YOUR CDC 602-

Name ___JONES___    CDC#: _F93018_    Issue: ___9___    Housing: _FC3•104_

YOUR CDC 602/1824 APPEAL FORM DATED _12•7•10_ IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

☐ 1. The action or decision being appealed is not within the jurisdiction of this department.

☐ 2. You have submitted a duplicate appeal on the same issue. Check one:
- ☐ Your first appeal is currently under review at the _____ level – Log # _____
- ☐ This appeal has been withdrawn.
- ☐ Your appeal was completed, Log # _____

☐ 3. You are appealing an action not yet taken.

☐ 4. You have not attempted to resolve the problem at the informal level with: _____.
- ☐ Counselor   ☐ Maintenance   ☐ Visiting Sgt.   ☐ Records   ☐ Housing Unit C/O
- ☐ Medical Clinic   ☐ Trust Office   ☐ Mailroom   ☐ Law Library   ☐ C/O who Inventoried Prop
- ☐ Psyche Clinic   ☐ I/M Assignment Office   ☐ R&R   ☐ Fac. Prop. C/O   ☐ Other _____

☒ 5. You have not adequately completed the Inmate/Parolee form (CDC 602) or attached the proper documents.

*Please attach the following items or explain why they are not available and send what you have back to the Appeals Office ASAP*

- ☐ CDC 115 After Completion of RVR
- ☐ CDC 115A ☐ Supplemental ☐ Incident Report
- ☐ CDC 1858 Rights and Responsibilities Statement
- ☐ CDC 1845 Inmate/Parolee Disability Verification
- ☐ CDC 128-G Initial Classification Committee
- ☐ CDC 128-G ICC/UCC Classification Committee Action
- ☐ CDC 128-G UCC ☐ CSR Referral ☐ Annual Review
- ☐ CDC 128-G ASU/ICC Chrono as checked: ☐ Walk Alone ☐ Single Cell ☐ Release from ASU ☐ SHU Recommendation
- ☐ CDC 128-G Ad/Seg Initial Chrono ☐ CDC 114D
- ☐ CDC 128-G Ad/Seg ICC Class. Committee CSR Referral
- ☐ CDC 128-G CSR Endorsement
- ☐ CDC 629-A/B SHU Term Assessment Sheet
- ☐ CDC 7219 Medical Report
- ☒ Other (See Below)
- ☐ You may not request forms/documents thru the appeal process
- ☐ Submit Inmate Request for Interview not a 602
- ☐ You may only file 1 non-emergency appeal per 7 days. CCR 3084.4(a)
- ☒ Staff Complaint or _LIVING CONDITION ISSUE_ (choose one) (If staff complaint complete form 1858.) C. J.
- ☐ Failed to reasonably demonstrate, action, policy or condition as having an adverse affect upon the inmate's welfare, per CCR 3084.1(a).

- ☐ Appeal not ADA ISSUE
- ☐ CDC 1819 Denied Publications
- ☐ CDC 1030 Confidential Disclosure form
- ☐ CDC 128-A ☐ CDC 128-B ☐ CDC 128-C
- ☐ CDC 128-B1 Request for Removal from Assignment
- ☐ CDC 128-B2 SSU/IGI Gang Validation
- ☐ Resubmit First Level Response
- ☐ CDC 143 Prop./Trans. Receipt ☐ Cell Search Receipt
- ☐ Refer to and comply with previous CDC-695 dated _____
- ☐ CDC 839/840 Classification/Reclassification Score Sheet
- ☐ Complete Section: _____ ☐ Sign & Date Section: _____
- ☐ Not Staff Complaint – Reviewed by Hiring Authority
- ☐ Emergency Processing Not Warranted Per CCR 3084.7
- ☐ You must start appeal in Section A/B (then add 1 page)
- ☐ You cannot write "See Attached" in Section A or B

☐ 6. The appeal exceeds the 15 working day time limit and the inmate has failed to offer a credible explanation as to why he could not submit the appeal within established time limits, CCR 3084.2(c), 3084.3(c)(6), 3084.6(c).

☐ 7. A limit of only one continuation page, front and back, may be attached to the appeal to describe the problem and action requested in Sections A and B. CCR 3084.2(a)(1)

☐ 8. You may not submit an appeal on behalf of another inmate.

☐ 9. You must re-attach all previous Screening Forms (CDC 695's) relative to this appeal before the appeal can be processed any further.

☐ 10. Submit CDC 7362 (Health Care Request -pay) to health care to request medical, mental health, or dental treatment. Do not submit an appeal with the 7362. The facility Triage Nurse should see you within one working day of receiving your 7362. If you disagree with the treatment provided, you may submit a 602 explaining your dissatisfaction.

COMMENTS: EXPLAIN RELEVANCY OF ALTERED/DE-FACED ATTACHED MEMORANDUM DATED 9/27/10 OR DETACH FROM APPEAL.

_A. Pereira CCII_    _12•23•10_
A. PEREIRA, CCII - Appeals Coordinator CSP-Sacramento    Date

NOTE: This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this form to the Appeals Coordinator with the necessary information.

Permanent Appeal Attachment DO NOT REMOVE    CDC-695

# EXHIBIT COVER PAGE

| 12 |
|----|

EXHIBIT

Description of this Exhibit:

## SEGREGATION LOCK UP ORDER

Number of pages to this Exhibit: 1 pages.

JURISDICTION: (Check only one)

| | Municipal Court |
|---|---|
| | Superior Court |
| | Applellate Court |
| | State Supreme Court |
| XX | United States District Court |
| | State Circuit Court |
| | United States Supreme Court |
| | Grand Jury |

EFFECTIVE COMMUNICATION WAS ESTABLISHED WITH JONES THROUGH SIMPLE ENGLISH. JONES STATED HE UNDERSTOOD THE REASONS FOR AND THE CONTENT OF THE 114-L. LT CLOUGH IS SATISFIED JONES UNDERSTOOD THE REASONS FOR PLACEMENT IN THE SEGREGATED HOUSING UNIT.

STATE OF CALIFORNIA
ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

DEPARTMENT OF CORRECTIONS

TABE SCORE: **10.9**

FSA-104L

DISTRIBUTION:
WHITE - CENTRAL FILE
BLUE - INMATE (2ND COPY)
GREEN - ASU

CANARY - WARDEN
PINK - HEALTH CARE MGR
GOLDENROD - INMATE (1ST COPY)

INMATE'S NAME

**JONES (B) FC7-106U**

CDC NUMBER

**(F-93018)**

## REASON(S) FOR PLACEMENT (PART A)

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[X] ENDANGERS INSTITUTION SECURITY     [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:

You are being placed in Administrative Segregation (AD SEG) on Wednesday, December 01, 2010 pending an investigation into your status on C Facility. Specifically, on December 1, 2010, you were the victim of a Battery with a Weapon while in the C Facility 7 block rotunda, indicating your life may be in jeopardy if you were to remain in the C Facility general population. This matter will be investigated further by Officer Pizarro. For this reason, your presence in the C Facility General Population represents a threat to the safety and security of the Institution. You will be seen by the Institutional Classification Committee (ICC) within ten (10) days for appropriate program and housing considerations.

**MEDICATION:** YES / NO     **EOP:** YES / NO     **CCCMS:** YES / NO     **SINGLE CELL:** YES / NO

[ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)   [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: ____/____/____

| DATE OF ASU PLACEMENT | SRGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | | TITLE |
|---|---|---|---|---|
| 12/1/10 | J. CLOUGH | | | Lieutenant |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | | STAFF'S TITLE |
|---|---|---|---|---|---|
| 12/1/10 | 1330 | J. CLOUGH | | | Lieutenant |

[X] INMATE REFUSED TO SIGN     INMATE SIGNATURE     CDC NUMBER

## ADMINISTRATIVE REVIEW (PART B)
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement.*

STAFF ASSISTANT (SA)                                    INVESTIGATIVE EMPLOYEE (IE)

| STAFF ASSISTANT NAME | TITLE | | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |
|---|---|---|---|---|

**IS THIS INMATE:**

| | | | |
|---|---|---|---|
| LITERATE? | [X] YES [ ] NO | EVIDENCE COLLECTION BY IE UNNECESSARY | [X] YES [ ] NO |
| FLUENT IN ENGLISH? | [X] YES [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | [X] YES [ ] NO |
| ABLE TO COMPREHEND ISSUES? | [X] YES [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | [ ] YES [X] NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [ ] YES [ ] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | [X] YES |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [X] YES | | |

Any "NO" requires SA assignment          Any "NO" may require IE assignment

[X] NOT ASSIGNED                          [X] NOT ASSIGNED

### INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER     [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

[ ] NO WITNESSES REQUESTED BY INMATE     INMATE SIGNATURE                DATE

### WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY ____  [X] RETAIN PENDING ICC REVIEW  [ ] DOUBLE CELL  [X] SINGLE CELL PENDING ICC

REASON FOR DECISION: RETAIN ASU PX INVESTIGATION INTO YOUR "STATUS" ON C-FACILITY G/P. SAFTEY & SECURITY OF THE INSTITUT,

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| W.R. ARMSTRONG | FCA | 12/2/10 | 1730 | |

| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | DATE OF REVIEW |
|---|---|---|---|

See chronological Classification Review document (CDC 128 - G) for specific hearing information

# PROOF OF SERVICE

(C.C.P. §§1013(a); 2015.5; 28 U.S.C. §1746)

I, _CHARLES   JONES   JR._, am over the age of eighteen (18) years, and I (am) (am not) a party to the within cause of action. My address is:

_C.S.P.- SACRAMENTO_
_P.O, BOX 290066_
_REPRESA, CA, 95671_

On, _NOVEMBER 3, 2011_, I served the following documents:

_42 USC 1983  COMPLAINT FORM W/ ATTACHED COMPLAINT, EXHEBITS, IN FORMA_
_PAUPERES APPLICATION AND PROOF OF SERVICE_

on the below named individual(s) by depositing true and correct copies thereof in the United State mail in Represa, California, with postage fully prepaid thereon, addressed as follows:

1. _U.S.D.C. EASTERN DESTRICT_                 2. _____
   _SACRAMENTO DIVISION_                          _____
   _C/o COURT CLERK_                              _____
   _501 I. STREET, Room 4-400_                    _____
   _SACRAMENTO, CA, 95814_                        _____

I have read the above statements and declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this _3RD_ day of _NOVEMBER_, _2011_, at California State Prison - Sacramento, Represa, California.

(Signature) _Charles A. Jones Jr._